[Cite as *State v. Todd*, 2023-Ohio-4847.]

IN THE COURT OF APPEALS OF OHIO

TENULL APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | No. 20AP-587 |
| Plaintiff-Appellant, | : | (C.P.C. No. 97CR-6191) |
| v. | : | (REGULAR CALENDAR) |
| Casey Todd, | : | No. 20AP-588 |
| Defendant-Appellee. | : | (C.P.C. No. 98CR-0033) |
| | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on December 29, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Seth L. Gilbert* for appellant. **Argued:** *Seth L. Gilbert*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex* for appellee. **Argued:** *Robert D. Essex*.

APPEALS from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, filed a motion seeking a nunc pro tunc entry from the Franklin County Court of Common Pleas stating the sex offender classification of defendant-appellee, Casey Todd, arguing that its omission from his judgments of conviction was a clerical error. The trial court denied the state's motion and granted Mr. Todd's petition challenging his sex offender reclassification. As explained below, the trial court's rulings were not erroneous, although some of its reasoning was. Accordingly, we affirm the trial court's decision.

{¶ 2} On November 7, 1997, the state filed an indictment against Mr. Todd alleging seven counts of rape under R.C. 2907.02, with six counts carrying sexually violent predator

specifications under R.C. 2941.148. (Nov. 7, 1997 Indictment, Case No. 97CR-6191 (hereinafter, "Case No. 6191.")) The counts alleged that Mr. Todd had inflicted multiple sexual acts by force or threat of force on a minor victim over a period of years when the victim was aged nine to thirteen. *Id.* Two months later, the state filed another indictment alleging fourteen counts of rape committed by Mr. Todd, eight with sexually violent predator specifications. (Jan. 6, 1998 Indictment, Case No. 98CR-0033 (hereinafter, "Case No. 33.")) The victim was another minor who was six and seven years old on the offense dates. *Id.*

{¶ 3} Mr. Todd entered into plea agreements with the state to resolve the charges. In Case No. 6191, he pled guilty to one first degree felony count of rape with no violent sexual predator specification and, in lieu of one other rape count, he pled guilty to the lesser included offense of gross sexual imposition under R.C. 2907.05, a third degree felony. In Case No. 33, he pled guilty to one first degree felony count of rape absent a violent predator specification. He agreed to serve a ten-year prison sentence for each rape conviction, to be served concurrently, and he agreed to a term of probation for the gross sexual imposition conviction. (July 14, 1999 Entry of Guilty Plea, Case No. 6191; July 14, 1999 Entry of Guilty Plea, Case No. 33.) Both plea agreements noted Mr. Todd's stipulation to be classified as a sexual predator under Megan's Law, the then-current sexual offender registry notification ("SORN") law. *See* Former R.C. 2950.09, repealed in 2007 Am.Sub.S.B. No. 10.

{¶ 4} The trial court's judgment in Case No. 6191 stated that it had "found the Defendant guilty of the charge to which the plea was entered" and sentenced Mr. Todd to ten years imprisonment on the rape charge, to run concurrently with the sentence in Case No. 33. (July 14, 1999 Jgmt. Entry, Case No. 6191 at 1.) The judgment made no mention of the gross sexual imposition charge from the plea agreement or Mr. Todd's stipulation to the sexual predator classification. *Id.* The judgment in Case No. 33 stated that the trial court had accepted Mr. Todd's plea, found him guilty of the offense of rape, and imposed a ten-year prison term to run concurrently with the sentence in Case No. 6191. (July 14, 1999 Jgmt. Entry, Case No. 33.) A year later, the trial court entered a "Corrected Judgment Entry" stating that five years of the sentence was mandatory. (Aug. 10, 2000 Corrected

Jgmt. Entry, Case No. 33.) However, as in Case No. 6191, the entry made no mention of Mr. Todd's sexual offender classification under Megan's Law.

{¶ 5} Megan's Law had two statutorily defined sex offender classifications: "habitual sex offender" and "sexual predator." *See* Former R.C. 2950.01(B) (defining "habitual sex offender" as "a person who is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses") and R.C. 2950.01(E) (defining a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses"). The sentencing judge was required to conduct a hearing and consider a number of statutory factors to classify the defendant as a sexual predator. Former R.C. 2950.09(B). The habitual sex offender classification depended on the defendant's criminal history and could also attach to a defendant classified as a sexual predator. Former R.C. 2950.09(E).

{¶ 6} Another category, "sexually oriented offender," applied to a defendant who had committed what qualified as a "sexually oriented offense" under Megan's Law but otherwise did "not fit the description of either habitual sex offender or sexual predator." *State v. Cook*, 83 Ohio St.3d 404, 407 (1998), *superseded by statute as recognized in State v. Williams*, 114 Ohio St.3d 103, 2007-Ohio-3268, ¶ 9. The "sexually oriented offender" classification was "the least restrictive designation" under Megan's Law. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 9. For a defendant who was "neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attache[d] as a matter of law." *Id.*, paragraph two of the syllabus. Upon conviction for a sexually oriented offense under Megan's Law, a defendant was "automatically classified as a sexually oriented offender" and subject to the registration and notification requirements applicable to that classification. *Id.* at ¶ 15. *See also State v. Zerla*, 10th Dist. No. 04AP-1087, 2005-Ohio-5077, ¶ 7 (applying *Hayden* and holding that the "defendant's status as a sexually oriented offender arose by operation of law, and not as a result of the trial court's * * * judgment," as "the trial court plays no role in the imposition of the sexually oriented offender designation").

{¶ 7} Megan's Law was repealed in 2007 with the passage of Senate Bill 10, the Adam Walsh Act ("AWA"). The General Assembly passed the AWA in order to comply with

the requirements of the Adam Walsh Child Protection and Safety Act, P.L. 109-248, 120 Stat. 587, a federal statute that "created national standards for sex-offender registration, community notification, and classification." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 18-20 (describing passage of the AWA and its federal counterpart). Unlike Megan's Law, the AWA does not rely on any judicial determination of a defendant's sex offender classification. "Instead, offenders are classified as Tier I, Tier II, or Tier III sex offenders (or child-victim offenders) based solely on the offender's offense." *Id.* at ¶ 21. The AWA directed the Attorney General to reclassify offenders with a previous Megan's Law classification under the new law's tier system and notify them by mail of their new classification before its effective date. R.C. 2950.031(A). The AWA also provided offenders with the "right [to] a court hearing to contest" the Attorney General's reclassification. R.C. 2950.031(E).

{¶ 8} Against these changes in Ohio's SORN laws, Mr. Todd was released from prison in 2007 and, with no mention of a judicially determined classification in the judgment entries of his criminal cases, was classified by operation of law as a sexually oriented offender. (Nov. 5, 2020 Supp. to Def.'s Petition to Contest Reclassification at 2.) Under Megan's Law, a sexually oriented offender had to comply with the registration and notification requirements for ten years. Former R.C. 2950.07(B)(3). After receiving notification from the Attorney General that he was to be reclassified as a Tier III sex offender under the AWA, a classification that carries a lifetime registration requirement under R.C. 2950.07(B)(1), Mr. Todd filed a petition under R.C. 2950.031(E) to contest the reclassification on July 24, 2008. He argued that the Tier III reclassification under the AWA was unconstitutional under the United States Constitution and the Ohio Constitution because it violated his right to due process, subjected him to double jeopardy, and was being applied retroactively. (July 24, 2008 Def.'s Petition to Contest Reclassification.) As relief, he requested orders from the trial court declaring the AWA unconstitutional as applied to him, as well as an order declaring that he "shall be subject only to those requirements and sanctions contemplated and agreed upon by the parties at the time of his plea agreement, guilty plea and sentencing, and only to those understood and voluntarily agreed to by him

at the time of his plea agreement, guilty plea and sentencing."[1] *Id*. at 4-5. Nearly a year later, the state filed a motion for leave to file a memorandum opposing the petition. The state argued that the AWA was constitutional as applied to Mr. Todd and noted that he had stipulated to his "status as a sexual predator" by referencing the plea agreements he had signed. (July 1, 2009 Mot. for Leave to File Memo Opp. Petition Contesting Reclassification at 2.)

{¶ 9} For the next eleven years, the trial court did not rule on Mr. Todd's petition. During this time, a number of cases challenged the constitutionality of the AWA. The Supreme Court of Ohio held that its automatic reclassification provisions, R.C. 2950.031 and 2950.032, violated the doctrine of separation of powers because they authorized the executive branch to reopen final judgments and reclassify offenders who had already been subject to judicial classification under Megan's Law. *Bodyke* at paragraphs one and two of the syllabus. In addition, Supreme Court of Ohio held that the AWA, "as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, syllabus. Although the AWA purported to repeal Megan's Law, such repeal was held to be "invalid as it affects offenders originally classified under Megan's Law" and such offenders have "a continuing duty to comply with Megan's Law requirements." *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, ¶ 22. "Megan's Law's separate statutory scheme continues to apply to offenders who committed a sexually oriented offense prior to the effective date of the AWA, and the repeal of the hearing provisions required to classify those offenders is ineffective as it affects offenders subject to Megan's Law." *State ex rel. Grant v. Collins*, 155 Ohio St.3d 242, 2018-Ohio-4281, ¶ 13.

{¶ 10} On February 19, 2020, the state filed a motion asking the trial court to rule on Mr. Todd's petition, taking the position that he should still be classified as a Tier III offender under the AWA or, alternatively, a sexual predator under Megan's Law. (Feb. 19,

---

[1] We note that this request could be interpreted as asking the trial court to declare him a sexual predator under Megan's Law because, as Mr. Todd concedes, that was what he stipulated to as part of his plea agreement. However, such a declaration would have been error because, as explained below, the trial court rendered no judgment addressing his classification under Megan's Law. Thus, relief under the petition could not be a return to a classification that was never rendered.

2020 Mot. for Expedited Consideration of Petition to Contest Reclassification.)  The state also filed a motion requesting that the trial court issue a nunc pro tunc entry adding a sexual predator classification to Mr. Todd's original judgments.  (Nov. 12, 2020 Mot. for Nunc Pro Tunc Entry.)  Describing the omission as a "clerical error," the state invoked both Civ.R. 60(A) and Crim.R. 36 as grounds for its motion.  *Id*. at 3.

{¶ 11}  On November 5, 2020, Mr. Todd filed a memorandum in opposition to the state's motion.  He argued that under *Bodyke* and *Williams*, the AWA could not be applied to him.  (Nov. 5, 2020 Supp. to Def.'s Petition to Contest Reclassification at 4.)  He also argued that, because he had completed both his prison sentence and the ten-year registration requirement applicable to sexually oriented offenders under Megan's Law, reclassification as a sexual predator would violate his right to due process.  *Id*. at 4-5.  He additionally argued that res judicata prohibited any correction of the judgments with a nunc pro tunc entry because the state "could have filed an appeal of the faulty entry" but failed to do so.  *Id*. at 4.

{¶ 12}  After a hearing, the trial court issued a ruling granting Mr. Todd's petition challenging reclassification and denying the state's motion for a nunc pro tunc entry.  The trial court rejected the state's assertion that Mr. Todd could be classified as a Tier III offender under the AWA, stating that its "argument runs afoul of the Supreme Court precedent" in *Williams* and *Bodyke*.  (Nov. 23, 2020 Decision & Entry at 6.)  Concluding that "the AWA cannot be applied to Mr. Todd," the trial court granted his petition and declared that "he is to be classified as a sexually oriented offender under Megan's Law."  *Id*.

{¶ 13}  The trial court denied the state's request for a nunc pro tunc entry on several grounds.  First, the trial court agreed that the judgments' failure to mention "the parties' stipulated classification" of Mr. Todd as a sexual predator under Megan's Law was "an error," but ruled that the state "needed to correct it on direct appeal."  *Id*. at 8, citing *State v. Smith*, 10th Dist. No. 11AP-311, 2011-Ohio-6669.  Second, the trial court distinguished *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, in which the Supreme Court of Ohio endorsed the use of a nunc pro tunc entry to remedy the omission of a postrelease control from a sentencing entry.  The defendant in *Qualls* was still in prison and postrelease control had not started at the time it was decided, whereas Mr. Todd would "go from having completed registration, to registering for the rest of his life" if a nunc pro tunc entry

reclassified him as a sexual predator. *Id.* at 9. Third, the trial court found that the omission of the sexual predator classification was a substantive error, not a clerical one, and therefore not amenable to correction by a nunc pro tunc entry. Finally, citing *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, and *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, the trial court stated that the error in the sentencing entries rendered them voidable, not void, and therefore only able to be corrected by direct appeal. *Id.* at 11.

{¶ 14} The state filed a motion for leave to appeal under R.C. 2945.67(A), which we granted.[2] (Apr. 1, 2021 Journal Entry.) The state raises two assignments of error:

> [I.] The trial court erred and abused its discretion in granting the petition contesting reclassification as a sexually oriented offender under Megan's Law when the record reflected the trial court's finding that the defendant is a sexual predator.

> [II.] The trial court erred and abused its discretion in denying the motion for a nunc pro tunc entry to correct the court's clerical error in omitting the sexual predator finding from the judgments.

{¶ 15} We will first address the state's second assignment of error, which challenges the trial court's denial of the state's motion for a nunc pro tunc entry. When moving the trial court, the state cited both Civ.R. 60(A) and Crim.R. 36 as grounds for granting the nunc pro tunc entry. (Nov. 12, 2020 Mot. for Nunc Pro Tunc Entry at 3.) As explained below, only Civ.R. 60(A) applies here. A trial court ruling under Civ.R. 60(A) is reviewed for an abuse of discretion. *Bond v. de Rinaldis*, 10th Dist. No. 16AP-756, 2018-Ohio-930, ¶ 13 ("Appellate courts apply an abuse of discretion standard when reviewing a trial court's decision under Civ.R. 60(A) to correct clerical mistakes in a judgment.").

{¶ 16} The state argues that the omission of Mr. Todd's classification as a sexual predator under Megan's Law from the original judgment "was plainly an error that was clerical in nature," noting references to the classification in paperwork filed on the docket and in the sentencing transcript. (Brief of Plaintiff-Appellant at 33-34.) Supposing that

---

[2] The state invoked R.C. 2945.67(A), which allows discretionary review of rulings in criminal cases where no statute or rule expressly provides for appellate jurisdiction over the ruling. However, because proceedings under Megan's Law are civil, our jurisdiction to review the second assignment of error actually arises under our authority to review a trial court's ruling on a motion under Civ.R. 60(A). *E.g.*, *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97 (1996) (reviewing trial court ruling on a Civ.R. 60(A) motion).

this paperwork "did not reach the clerical typist for inclusion in the court's judgment," the state concludes that the omission of the sexual predator classification was clerical "[b]y definition" and subject to correction by nunc pro tunc entry. *Id.* at 34. The state also rejects the trial court's ruling that it was required to correct the omission by a direct appeal and that res judicata now bars it from obtaining relief. *Id.* at 35-36. In support, the state cites *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, in which the Supreme Court of Ohio upheld a trial court's correction by nunc pro tunc entry of its failure to state the period of postrelease control in the judgment entry that it had imposed at sentencing. *Id.* at 36-37.

{¶ 17} Mr. Todd's response defends the trial court's ruling that res judicata applies, citing *State v. Smith*, 10th Dist. No. 11AP-311, 2011-Ohio-6669, in which this court affirmed a trial court's decision to vacate a defendant's Tier III classification under the AWA and reinstate his previous Megan's Law classification. (Brief of Defendant-Appellee at 15-16.) He also argues that *Qualls* is distinguishable because the defendant in that case was still serving time when it was decided, whereas Mr. Todd has completed both his prison sentence and the registration requirement under his Megan's Law classification. *Id.* at 19. Furthermore, in Mr. Todd's reading, *Qualls* only applies to corrections of postrelease control. *Id.* at 20.

{¶ 18} Before discussing the propriety of a nunc pro tunc entry in this matter, an examination of the existing judgment entries is in order. The dated judgment entries in both of Mr. Todd's criminal cases stated that he had pled guilty to certain offenses and that the court had found him guilty of those offenses, and stated as well as the specific sentences imposed. (July 14, 1999 Jgmt. Entry, Case No. 6191; July 14, 1999 Jgmt. Entry, Case No. 33.) Thus, both judgment entries bear all the indicia of being final appealable orders of Mr. Todd's criminal convictions.[3] Crim.R. 32(C) ("A judgment of conviction shall set forth the fact of conviction and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal."); *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204,

---

[3] The state argues that under *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, the judgment in Case No. 6191 was not a final appealable order because it did not reflect the dismissal of the gross sexual imposition charge in Count One of the indictment. Thus, the state argues the judgment could be corrected with a nunc pro tunc entry to reflect the dismissal and the sexual predator classification under Megan's Law. Whether or not the judgment of conviction in Case No. 6191 was a final appealable order, the fact remains that the Megan's Law proceeding never culminated in a final appealable order, as discussed below. The two proceedings are "legally distinct." *Hunter v. Binette*, 154 Ohio St.3d 508, 2018-Ohio-2681, ¶ 16.

paragraph one of the syllabus (explaining that under Crim.R. 32(C) "A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk").

{¶ 19} However, "[p]roceedings under Megan's Law were civil in nature, not criminal." *State ex rel. Hunter v. Binette*, 154 Ohio St.3d 508, 2018-Ohio-2681, ¶ 16. "As a result, sex-offender-classification proceedings were 'legally distinct from the proceedings governing a defendant's underlying criminal conviction(s) and sentence.' " *Id.*, quoting *State v. Gibson*, 2d Dist. No. 2009 CA 47, 2010-Ohio-3447, ¶ 25. For this reason, "courts often addressed the criminal sentence and the classification determination in separate entries and treated them as separately appealable orders."[4] *Id.* Thus, in a criminal proceeding in which a conviction requires a judicial determination of the offender's classification under Megan's Law, the question of whether the judgment of conviction is a final appealable order is distinct from the question of whether the judicial determination of the sex offender's classification is a final appealable order. *See Gibson* at ¶ 22 (holding that "[a] defendant's sex offender classification is not a 'final judgment of conviction' and is not a part of the criminal sanctions imposed upon a convicted defendant under the sentencing statutes"); *State v. Megarry*, 4th Dist. No. 17CA1051, 2018-Ohio-4242, ¶ 20 (holding that "[a] sex-offender classification under Megan's Law constitutes a final appealable order even when the sentencing entry itself is not a final appealable order"); *State v. Dobrski*, 9th Dist. No. 06CA008925, 2007-Ohio-3121 (appellate court had no jurisdiction to review deficient judgment of conviction that did not contain all Crim.R. 32(C) requirements because it was not a final appealable order, but did have jurisdiction to review sex offender classification under Megan's Law because it was a separate final appealable order under R.C. 2505.02(A)(2)); *State v. Hultz*, 9th Dist. No. 06CA0032, 2007-Ohio-2040, ¶ 21 (holding that appellate court could "proceed to consider Defendant's appeal of his sexual

---

[4] Although the statutory text of Megan's Law stated that "the judge shall specify in the offender's sentence and the judgment of conviction that contains the sentence" whether or not the judge had determined that the offender was a sexual predator, as *Binette* acknowledged, it was not always possible to include the determination in the judgment of conviction. Former R.C. 2950.09(B)(3); *Binette* at ¶ 16. For example, the sexual offender hearing and the sentencing hearing might be held at different times, as one requirement of Megan's Law was that the judge "conduct the hearing prior to sentencing" the defendant. Former R.C. 2950.09(B)(1).

predator designation separately from his appeal of his sentence, despite the fact that the sentencing entry was not a final appealable order"). As all parties acknowledge, the judgment entries in this case make no mention of Mr. Todd's sex offender classification. They are judgment entries of conviction that terminated the trial court's criminal jurisdiction over Mr. Todd. *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, ¶ 9 ("Once a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends."). However, because no judgment entry addressed the question of his sex offender classification, Mr. Todd's "legally distinct" civil sex offender proceedings under Megan's Law remain unresolved. *Binette* at ¶ 16.

**{¶ 20}** A trial court previously failed to enter judgment of a sex offender's classification under Megan's Law and we addressed the complications this created in two related cases. First, in *State v. Ronan*, 10th Dist. No. 04AP-1387, 2005-Ohio-5088 ("*Ronan I*"), the defendant entered a guilty plea to multiple counts of rape and unlawful sexual contact with a minor. *Id*. at ¶ 2. On appeal, he challenged both the trial court's sentence and the sexual predator classification under Megan's Law. *Id*. We reversed the trial court for imposing more than the minimum sentence on the defendant, a first-time offender, without making the findings required by R.C. 2929.14(B). *Id*. at ¶ 5. However, we lacked jurisdiction to address the trial court's sexual predator determination. *Id*. at ¶ 8. "Because the trial court has not journalized its decision finding defendant to be a sexual predator, we lack a final appealable order." *Id*., citing R.C. 2505.02. Accordingly, the challenge to the sex offender classification portion of the appeal was dismissed. *Id*.

**{¶ 21}** On remand, a new judge resentenced the defendant, but "declined to address the sexual predator finding made by the prior trial judge." *State v. Ronan*, 10th Dist. No. 06AP-63, 2007-Ohio-168, ¶ 5 ("*Ronan II*"). The defendant appealed the new sentence and the state cross-appealed the trial court's failure to enter the prior judge's classification of the defendant as a sexual predator. *Id*. at ¶ 6. The defendant then dismissed his appeal of the sentence, but we addressed the state's cross-appeal. *Id*. at ¶ 7.

**{¶ 22}** *Ronan II* noted that, under Rule 7 of the Rules of Superintendence for the Courts of Ohio, a trial court is required to journalize a judgment entry within 30 days of its verdict or decision. *Id*. at ¶ 10. Furthermore, in a civil case, Civ.R. 63(B) allows a successor

judge to enter judgment if the original judge is unable to do so. *Id.* at ¶ 11. Applying these rules to the procedural history of *Ronan I*, we stated:

> In this case, the original trial judge complied with [former] R.C. 2950.09(B)(1)(a), conducted the required hearing and found that appellant was a sexual predator. However, that finding was not reduced to judgment by journal entry. Hence, in our earlier decision, we found that there was no final appealable order and, therefore, we had no jurisdiction to entertain appellant's challenge to the trial court's finding that he was a sexual predator.
>
> Because there was no final appealable order as to the sex offender classification, nothing precluded the trial court from carrying out its duty to journalize that decision. Moreover, because we expressly held that without a final appealable order, we lacked jurisdiction to consider the sexual predator classification, our remand for resentencing could not have implicated the sexual predator classification decision made by the original trial judge. The trial court remained free to journalize that sex offender classification finding or grant a new sex offender classification hearing. *See* Civ.R. 63(B).

*Id.* at ¶ 16-17.

{¶ 23} Lacking a final appealable order to review, we could only dismiss the state's cross-appeal. *Id.* at ¶ 21. Without jurisdiction, this court could provide no remedy because "procedendo, not appeal, is appropriate where a court has either refused to render judgment or has unnecessarily delayed proceeding to judgment." *Id.*, citing *State ex rel. Crandall, Pheils & Wisniewski v. DeCessna*, 73 Ohio St.3d 180, 184 (1995).

{¶ 24} The procedural history of this case raises many of the same issues. As in *Ronan I* and *Ronan II*, the judgment entries of Mr. Todd's convictions were silent as to the sexual predator determination. Because no separate judgment entry journalized the determination, there was no final appealable order terminating Mr. Todd's civil proceedings under Megan's Law. "The fact that the criminal aspects of the case were reduced to a sentence and therefore, provided a final judgment from which to appeal does not alter the fact that the civil portion of the case was not reduced to judgment." *Ronan II* at ¶ 19.

{¶ 25} Because "[p]roceedings under Megan's Law were civil in nature, not criminal," Civ.R. 60(A), not Crim.R. 36, is the appropriate rule under which to evaluate the state's request for a nunc pro tunc entry. *Binette* at ¶ 16. Civ.R. 60(A) codifies the common

law rule allowing courts to issue nunc pro tunc entries, "a power the courts have always had." *State ex rel. Henry v. Britt*, 67 Ohio St.2d 71, 74 (1981). *See also Heinrichs v. 356 Registry, Inc.*, 10th Dist. No. 15AP-532, 2016-Ohio-4646, ¶ 61 ("The common law rule giving courts the power to enter nunc pro tunc orders has been codified by Civ.R. 60(A)."). The rule states: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." Civ.R. 60(A). The rule "permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments." *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996), citing *Londrico v. Knowlton*, 88 Ohio App.3d 282 (9th Dist.1993).

{¶ 26} "The function of an entry nunc pro tunc is the correction of judicial records insofar as they fail to record, or improperly record, a judgment rendered by the court, as distinguished from the correction of an error in the judgment itself, or in the failure to render the judgment." *Caprita v. Caprita*, 145 Ohio St. 5, 7 (1945). "A *nunc pro tunc* order may not render a judgment or modify a judgment never made in the first instance." *Showcase Homes v. Ravenna Sav. Bank*, 126 Ohio App.3d 328, 330 (3d Dist.1998), citing *McKay v. McKay*, 24 Ohio App.3d 74, 75 (11th Dist.1985). The use of a nunc pro tunc entry to correct "mistakes in judgments" presupposes that a court rendered judgment. Civ.R. 60(A). Here, however, the court never rendered a judgment dispositive of Mr. Todd's classification under Megan's Law.

{¶ 27} The state's attempts to frame the error as clerical and not substantive cannot conjure a judgment to correct where none exists. The state points first to the sentencing transcript. After imposing sentence, the original judge considered the statutory factors relevant to a sexual predator determination under Megan's Law before stating: "In applying the criteria and the conclusion [that Mr. Todd was likely to reoffend], the court does determine that Mr. Todd is a sexual predator." (July 12, 1999 Tr. at 41-42.) However, "a court speaks only through its journal entry and not by oral pronouncement or mere written minute or memorandum." *Scheidler v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-584, 2005-Ohio-105, ¶ 12, citing *Schenley v. Kauth*, 160 Ohio St. 109 (1953). *See also Bittmann v. Bittmann*, 129 Ohio St. 123, 127 (1934) ("The oral announcement of a judgment

or decree by the trial court binds no one.  It is axiomatic that the court speaks from its journal.")  A judge's oral determination that a defendant is a sexual predator under Megan's Law is not a judgment.  *State v. Bowman*, 10th Dist. No. 02AP-1025, 2003-Ohio-5341, ¶ 19 (holding that "even though the trial court orally pronounced defendant to be a sexual predator * * * because a court speaks from its journal and not by oral pronouncements from the bench * * * [the] oral pronouncement did not constitute judgment").

{¶ 28}  The state also points to several administrative filings on the docket, including a "sentencing sheet" and a "processing sheet" containing handwritten notations, presumably of court staff, evidencing Mr. Todd's status as a sexual predator.  Such documents are not judgments.  *See State v. McLaughlin*, 157 Ohio App.3d 1, 2004-Ohio-1780, ¶ 7 (10th Dist.) (holding that there was no final judgment where trial court announced decision at hearing and filed "a criminal case processing sheet the next day reflecting that oral ruling").  We have previously rejected the argument that the presence on the docket of such administrative records entitles the state to a nunc pro tunc entry stating a Megan's Law sex offender classification absent from the sentencing entry.  *State v. Smith*, 10th Dist. No. 11AP-311, 2011-Ohio-6669, ¶ 8.  Because there was no judgment rendered in the civil Megan's Law proceeding, the state was not entitled to a nunc pro tunc entry to remedy its absence.

{¶ 29}  We acknowledge that the text of Megan's Law states that "the judge shall specify in the offender's sentence and the judgment of conviction that contains the sentence" the sexual predator determination, if made.  Former R.C. 2950.09(B)(3).  The General Assembly certainly intended for a Megan's Law classification and the judgment of conviction to coexist in a single entry.  Thus, Megan's Law itself, as drafted, requires the judgment of conviction to contain the sex offender classification.  But when a trial court fails to include this language, it does not only fail to comply with a formal statutory mandate. Because Megan's Law proceedings were held to be civil and remedial by the Ohio Supreme Court, and "sex-offender-classification proceedings were 'legally distinct from the proceedings governing a defendant's underlying criminal conviction(s) and sentence,' " a trial court that omits a Megan's Law classification fails to enter a final judgment in that parallel proceeding.  *Binette* at ¶ 16.  That is the holding of *Ronan I* and *Ronan II*, and we are bound by it.  Res judicata does not apply here because it "cannot apply if the trial court

never issued a final, appealable order." *State ex rel. McIntyre v. Summit Cty. Court of Common Pleas*, 144 Ohio St.3d 589, 2015-Ohio-5343, ¶ 7, citing *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, ¶ 3. Res judicata "is inapplicable here because the non-punitive, civil, sexual predator finding was never reduced to judgment." *Ronan II* at ¶ 19.

{¶ 30} Furthermore, as the Supreme Court of Ohio has recently explained in *State v. Schilling*, __ Ohio St.3d __, 2023-Ohio-3027, its holding in *Henderson*—that res judicata bars challenges to errors in a final judgment that a party fails to challenge in a direct appeal as long as the trial court did not err in the exercise of its subject matter jurisdiction—does not apply to sexual offender classifications under either Megan's Law or the AWA that arise as a matter of law. In *Schilling*, neither the "sentencing entry nor any other judgment entered by the trial court * * * actually imposed, by judicial determination," the defendant's Tier I status under the AWA. *Schilling* at ¶ 23. Only a "document signed by Schilling and the trial-court judge that informed Schilling of his duty to register and report as a Tier I offender and the court's entry noting that Schilling had been informed of those duties" referenced the classification. *Id.* However, the court explained, "[n]either of these is a trial-court judgment such that our holding in *Henderson* might apply to any error it may contain." *Id.* "Likewise, classification as a sexually oriented offender under Megan's Law and the attendant registration and reporting obligations do not arise from a trial court's judgment." *Id.* at ¶ 25. Here, as well, neither of the final judgments in Mr. Todd's criminal cases "actually imposed, by judicial determination," a sexual predator classification under Megan's Law. *Id.* at ¶ 23. His classification as a sexually oriented offender under Megan's Law did "not arise from a trial court's judgment," but was automatic and by operation of law. *Id.* at ¶ 25.

{¶ 31} Contrary to the position of the trial court and Mr. Todd, our mention of res judicata in *Smith* does not bind the state. In *Smith*, as in this case, there was "no sex offender classification in the sentencing entry." *Smith* at ¶ 2. The state reclassified the defendant as a Tier III offender under the AWA, and we affirmed the trial court's decision to grant the defendant's petition contesting reclassification under R.C. 2950.031(E). *Id.* at ¶ 2, 16. We rejected the state's argument that a nunc pro tunc entry could correct the judgment with a judicial determination of the defendant as a sexual predator under Megan's Law because of an "incomplete record" that lacked a transcript and only

mentioned the determination in a notation on a sentencing sheet. *Id.* at ¶ 9. "In any event," we stated, "res judicata bars the state from challenging the sentencing entry now, given that it could have previously filed an appeal when the entry was issued 14 years ago." *Id. Smith* failed to recognize our previous holdings in *Ronan I* and *Ronan II*, as well as the dichotomy between the civil, remedial Megan's Law proceedings and the criminal sentence and conviction, that should have resulted in recognizing that there was no final appealable order before the court under Megan's Law. An appellate court "not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 43. *Smith* is overruled only to the extent that it held that res judicata applies to a Megan's Law determination that is absent from a judgment entry of conviction.

{¶ 32} The trial court's reasoning when overruling the state's motion for a nunc pro tunc entry also appears to arise from concerns about finality and disapproval of the effect lifetime registration would have on Mr. Todd:

> Treating the failure to include a classification in the Entry as a clerical error will drastically change Mr. Todd's status. As of now, Mr. Todd has served his prison sentence and completed his required registration. This has been his status since 2018. * * * The consequence of labeling that a clerical error is changing Mr. Todd's status from [having] finished registering, to registering for the rest of his life.

(Nov. 23, 2020 Decision & Entry at 7.)

{¶ 33} The trial court's concerns are misplaced. Although Mr. Todd has been released from prison, any expectation of finality does not extend to his status under Megan's Law because "classification as a sex offender under Megan's Law is a civil, remedial consequence of the conviction and not a punitive component of criminal sentencing." *State ex rel. Grant v. Collins*, 155 Ohio St.3d 242, 2018-Ohio-4281, ¶ 17. "The classification requirements inherent in Megan's Law were determined by the Ohio Supreme Court to be civil and remedial, and thus are not a punishment within the defendant's sentence." *State v. Bell*, 12th Dist. No. CA2015-10-077, 2016-Ohio-7363, ¶ 13 (affirming trial court's decision granting state's motion to reclassify defendant under Megan's Law who had erroneously been classified under the AWA and rejecting defendant's argument that the trial court lacked jurisdiction over him because his prison term was complete before the

reclassification hearing). *See also State v. Sturgill,* 4th Dist No. 16CA21, 2017-Ohio-2736, ¶ 23 (applying *Bell* and "find[ing] no statutory authority that divested the trial court's jurisdiction to hold the required [Megan's Law classification] hearing, despite Appellant's release from prison over two years ago").

{¶ 34} Finally, we note that *Qualls* does not entitle the state to a nunc pro tunc entry "correcting" Mr. Todd's criminal judgment of conviction. *Qualls* held that a trial court may remedy the omission of postrelease control from a judgment of conviction with a nunc pro tunc entry if it qualified as a clerical error under Crim.R. 36. *Qualls,* 2012-Ohio-1111, at ¶ 15. Unlike Megan's Law, postrelease control is a criminal sanction and part of a defendant's criminal sentence. *See* R.C. 2967.28(B) ("Each sentence to a prison term * * * shall include a requirement that the offender be subject to a period of post-release control"). Postrelease control is not a component of a civil proceeding, like Megan's Law. Under *Qualls*, its omission could be corrected under Crim.R. 36, but that rule has no application in a civil proceeding under Megan's Law. *Qualls* at ¶ 30. In *Qualls*, omitting postrelease control did not affect the validity of the final judgment that the nunc pro tunc entry corrected. Here, however, omission of the Megan's Law determination was itself a failure to enter a final appealable order in that parallel but "legally distinct" civil proceeding. *Binette*, 2018-Ohio-2681, at ¶ 16. *Qualls* has no application to this case.

{¶ 35} The trial court did not err by denying the state's motion, but its reasoning was incorrect. Under *Ronan I* and *Ronan II*, there was no final appealable order entered in Mr. Todd's Megan's Law proceeding, so there was no judgment entry to correct. The second assignment of error is overruled.

{¶ 36} We now turn to the first assignment of error, which challenges the trial court's ruling on Mr. Todd's petition for reclassification under the AWA. As noted previously, before the Ohio Supreme Court declared it unconstitutional, the AWA's reclassification process was designed to automatically apply the statute's three-tier classification system to sex offenders previously classified by judicial determination under Megan's Law. *See Bodyke*, 2010-Ohio-2424, ¶ 22 (describing the AWA's reclassification scheme, under which tier status was "assigned solely by reference to the offense" to persons previously classified under Megan's Law). Although the reclassification was intended to apply automatically, the AWA did provide offenders with a process to challenge the reclassification. An offender

could file a petition to "request as a matter of right a court hearing to contest the application to the offender * * * the new registration requirements" under the AWA. R.C. 2950.031(E). The statute stated that "at the hearing, all parties are entitled to be heard, and the court shall consider all relevant information and testimony presented relative to the application to the offender" of the AWA's registration requirements. *Id.* In such a hearing, the offender has the burden to prove "by clear and convincing evidence that the new registration requirements do not apply to the offender" to resist reclassification. *Id.* Although the Supreme Court of Ohio invalidated the AWA's automatic reclassification of offenders already classified under Megan's Law in *Bodyke*, that holding "did not invalidate the petition process for challenging a sex-offender classification under" the AWA. *State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, paragraph one of the syllabus.

{¶ 37} According to the state, Mr. Todd did not meet the burden under R.C. 2950.031(E) to demonstrate by clear and convincing evidence that he was entitled to not be classified as a Tier III offender under the AWA. (Brief of Plaintiff-Appellant at 18.) The state argues that *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, which held that offenders subject to Megan's Law could not be reclassified under the AWA because of the constitutional prohibition on retroactive punishment, does not foreclose reclassification of a Megan's Law offender:

> The AWA changes were not 'punitive' as applied to child rapists who have been determined to be a sexual predator. The difference in being treated as a Tier III offender under AWA and being a sexual predator is minimal and is fully justified by the remedial and regulatory purposes of the law in seeking to provide some measure of protection from offenders like defendant who raped multiple victims.

(Brief of Plaintiff-Appellant at 20.)

{¶ 38} In its brief, the state compares the registration requirements for sexual predators under Megan's Law to those for Tier III offenders under the AWA and concludes that the differences are "minimal" and not "punitive" under *Williams. Id.* at 21. In the state's view, the change in nomenclature from "sexual predator" to "Tier III" is even "ameliorative." *Id.* According to the state, "[t]he minimal changes are not 'punitive' as applied to sexual predators, and therefore the logic of *Williams* is inapplicable to an offender found to be a sexual predator." *Id.*

{¶ 39} In response, Mr. Todd argues that "the state continues to hold on to arguments that have been soundly rejected for years." (Brief of Defendant-Appellee at 6.) He believes that *Williams* applies to him and that the state's arguments amount to attempts "to deflect and mischaracterize" its holding. *Id*. at 7.

{¶ 40} As an initial matter, we note that the state's argument relies on the incorrect premise that Mr. Todd was judicially determined to be a sexual predator under Megan's Law. For the reasons previously discussed, there is no final judgment stating such a determination.

{¶ 41} Even if there were a final judgment stating that Mr. Todd was judicially determined to be a sexual predator under Megan's Law, the state's argument would still fail. The holding of *Williams* is unambiguous. The AWA, "as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *Williams* at syllabus. The phrase "defendants who committed sex offenses prior to its enactment" is broad and encompasses Mr. Todd. Elsewhere, *Williams* refers to the class of persons it applies to in similarly broad terms: "The issue before us is whether these changes, when applied to a person whose crime was committed prior to the enactment of S.B. 10, violate the prohibition against ex post facto laws." *Id*. at ¶ 7. *See also id*. at ¶ 21 (concluding that "imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive"). The defendant in *Williams* committed a sex offense prior to the AWA's passage but was classified under it as a Tier II offender. *Id*. at ¶ 1-3. Thus, the set of facts before the Supreme Court provided it with the opportunity to limit its holding to a particular class of sex offenders that did not include those judicially determined to be sexual predators under Megan's Law. There is no carveout of the *Williams* holding for "child rapists who have been determined to be a sexual predator," as the state suggests. (Brief of Plaintiff-Appellant at 20.) *Williams* held that the AWA was punitive as applied to all persons who committed sex offenses prior to its passage, regardless of the type of sex offense committed, or even if they had actually been subject to judicially determined classification under Megan's Law. *See Williams* at ¶ 21 ("When we consider all the changes enacted by S.B. 10 in aggregate, we conclude that imposing the

current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive.").

**{¶ 42}** Because *Williams* applies to Mr. Todd, the trial court did not err when it granted his petition challenging his reclassification as a Tier III offender under the AWA. Under *Williams*, Mr. Todd's reclassification violated the prohibition on retroactive punishment because he committed the sexual offenses that prompted the Tier III classification years before the AWA's enactment. *Williams* at syllabus. The trial court properly applied *Williams* in the first part of its discussion when granting the petition.

**{¶ 43}** However, after applying *Williams*, the trial court stated:

> Moreover, the practical results of applying the AWA to Mr. Todd are significant, not minimal. The practical result is Mr. Todd will go from a sexually oriented offender who has completed his registration requirement, to a Tier III sex offender subject to lifetime registration. Thus, the AWA cannot be applied to Mr. Todd.

(Nov. 23, 2020 Decision & Entry at 6.)

**{¶ 44}** This reasoning is erroneous. The AWA cannot be applied to Mr. Todd not because of the "significant" effect it would have on him, but because *Williams* held that to do so would violate the constitutional prohibition on retroactive application of the law. Furthermore, the trial court's statement could be interpreted to fall outside the bounds of the remedy contemplated by R.C. 2950.031(E):

> If at the conclusion of the hearing the court finds that the offender or delinquent child has proven by clear and convincing evidence that the new registration requirements do not apply to the offender or delinquent child, the court shall issue an order that specifies that the new registration requirements do not apply to the offender or delinquent child.

**{¶ 45}** Mr. Todd "is entitled to the remedy allowed by the statute: a declaration that the AWA does not apply to him and reinstatement of his previous classification." *Hawkins v. State*, 10th Dist. No. 15AP-979, 2016-Ohio-8016, ¶ 18. A petitioner "is not entitled to a declaration that he has no duty to register, or an order declaring his name be removed from any sex offender registry maintained by state or local authorities." *Id.* at ¶ 19. *See also State v. Bowling*, 10th Dist. No. 15AP-36, 2015-Ohio-3123, ¶ 7, 10, stating that R.C. 2950.031(E) "authorizes only a determination of whether the new Ohio 'Tier' classification applies to the offender" and that the petition process "was not a vehicle for the state to challenge his

original classification"); *State v. Chapman*, 10th Dist. No. 15AP-70, 2015-Ohio-4042, ¶ 9 (stating that "petitioners under R.C. 2950.031(E) are entitled to orders directing their return to their previous classifications" but not an opportunity for the state to relitigate the classification). Whether or not Mr. Todd had completed his registration requirement under Megan's Law was not the subject of the petition, and the statute does not authorize a court to rule on that issue. Nevertheless, the trial court did not err when granting the petition. We overrule the state's second assignment of error.

{¶ 46} Having overruled the state's two assignments of error, the judgments of the trial court denying the state's motion for a nunc pro tunc entry and granting Mr. Todd's petition challenging reclassification under R.C. 2950.031(E) are affirmed.

*Judgments affirmed.*

DORRIAN, J., concurs with separate opinion.
LUPER SCHUSTER, J., concurs in judgment only with separate opinion.

DORRIAN, J., concurring.

{¶ 47} I concur with the majority and would overrule both of the state's assignments of error and affirm the judgment of the trial court. I write separately, however, to emphasize that we overrule the second assignment of error for reasons other than those articulated by the trial court and to underscore that the trial court retains continuing jurisdiction to classify Todd as a sexual predator consistent with the parties' joint stipulation and the trial court's classification reflected in the record from the sentencing hearing.

{¶ 48} I concur with the majority that, consistent with the precedent of this court set forth in *State v. Ronan*, 10th Dist. No. 04AP-1387, 2005-Ohio-5088 ("*Ronan I*"), and *State v. Ronan*, 10th Dist. No. 06AP-63, 2007-Ohio-168 ("*Ronan II*"), no final appealable order exists with regard to the trial court's classification of Todd pursuant to Megan's Law.

{¶ 49} I also concur with the majority that *State v. Smith*, 10th Dist. No. 11AP-311, 2011-Ohio-6669, is overruled to the extent it held that res judicata applies to a Megan's Law determination that is absent from a judgment entry of conviction. The Supreme Court of Ohio's recent decision in *State v. Schilling*, ___ Ohio St.3d ___, 2023-Ohio-3027, supports such a conclusion.

{¶ 50} I also concur that the trial court could not issue a nunc pro tunc entry reflecting the trial court's sexual predator classification reflected in the transcript because a judgment regarding Megan's Law classification was never rendered in the first place. (Majority opinion at ¶ 24-25, 29.)

{¶ 51} Therefore, for the reasons articulated herein, not for the reasons articulated by the trial court, I concur with the majority that the trial court did not err in denying the state's motion for nunc pro tunc and would overrule the second assignment of error.

{¶ 52} Furthermore, I point out that, although not by means of a nunc pro tunc entry, the trial court retains jurisdiction to enter a judgment reflecting the sexual predator stipulation of the parties and classification by the court reflected in the transcript from the hearing regarding Megan's Law classification which took place at the end of the sentencing hearing on July 12, 1999. The following excerpts from the transcript of that hearing are particularly relevant:

> [THE COURT]: [Prosecutor] Canepa, if you could give me the terms of the plea first and then the facts of the respective cases.
>
> * * *
>
> [PROSECUTOR] CANEPA: Also, your Honor, there is an agreement by and between the parties, a stipulation, that [Todd] will be found a *sexual predator* for the purpose of registration under 2950.09 of the Ohio Revised Code.
>
> * * *
>
> Also, again, your Honor, the parties stipulate that [Todd] will be found a *sexual predator for the purpose of 2950.09, which would require lifetime registration and notification* for [Todd].
>
> * * *
>
> [THE COURT]: Now, [having sentenced Todd,] the next thing we need to do is to consider the type of classification that is required under what we refer to as House Bill 180. I am not sure it is necessary to do this, but I think, as a matter of safety, I will go ahead and do it anyway.

First of all, the court notes that the age of Mr. Todd at this time is 22 years. The age of the victims when the offenses occurred -- and this obviously went on for a more extended period of time with [M.C.] than it did with [M.W.]. But those ages were, I believe, six years and 11 years.

The court is not aware of any prior criminal record that Mr. Todd has. There were multiple victims to this offense. Drugs, alcohol, that type of thing, were not used to perpetuate the offense.

The question as to whether or not unusual cruelty was used in this offense, obviously, the offense by itself, by its very nature, is cruel. But I don't believe that the statute is referring to that when they ask the court to consider cruelty.

I believe what they are talking about is whether or not there was torture in the form of beatings, body mutations, that type of thing. Fortunately, that type of cruelty was not present in this particular case.

The court further feels that Mr. Todd has a mental disorder or a mental disease that cannot be cured. It is possible that it can be controlled. The rate of success in the treatment of this disease is getting better, but it is not full proof.

Based on that, the court cannot say that it does not believe that it is likely that Mr. Todd would reoffend. Or, putting it a different way, the court does believe that it is likely that Mr. Todd might reoffend at some future time.

In applying the criteria and the conclusion, *the court does determine that Mr. Todd is a sexual predator. And, therefore, reporting will be required for the rest of his life.* The form of reporting and the details of that will be explained by the institution prior to Mr. Todd being released from prison.

Is there anything else on belief of the state of Ohio?

[PROSECUTOR] CANEPA: I believe that's everything, your Honor.

THE COURT: Is there anything on behalf of the Mr. Todd?

[ATTORNEY] SCOTT: No, your Honor.

(Emphasis added.) (Case No. 20AP-587 July 12, 1999 Tr. at 2, 4-6, 41-43.)

{¶ 53} In *Ronan II*, after finding there was no final appealable order, we instructed the trial court that it would have the option to either journalize its prior Megan's Law classification or grant a new sex offender classification hearing:

> In this case, the original trial judge complied with R.C. 2950.09(B)(1)(a), conducted the required hearing and found that appellant was a sexual predator. However, that finding was not reduced to judgment by journal entry. Hence, in our earlier decision, we found that there was no final appealable order and, therefore, we had no jurisdiction to entertain appellant's challenge to the trial court's finding that he was a sexual predator.

> Because there was no final appealable order as to the sex offender classification, nothing precluded the trial court from carrying out its duty to journalize that decision. Moreover, because we expressly held that without a final appealable order, we lacked jurisdiction to consider the sexual predator classification, our remand for resentencing could not have implicated the sexual predator classification decision made by the original trial judge. *The trial court remained free to journalize that sex offender classification finding or grant a new sex offender classification hearing. See Civ.R. 63(B).*

> * * *

> *Throughout the course of the proceedings, the trial court has had jurisdiction over the civil sexual predator issue. Therefore, upon remand following [Ronan's] first appeal, the trial court had the opportunity to review the factual findings of the first trial judge and complete the judicial process by journalizing the sexual predator finding, or to conduct a new sexual predator hearing.*

(Emphasis added.) *Ronan II* at ¶ 16-20.

{¶ 54} The Supreme Court's holding in *Schilling* seems to confirm our reasoning in *Ronan* that the trial court has continuing jurisdiction over the sex offender classification in this case. *Schilling* held that *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, only applies with respect to errors in a trial court's exercise in judgment; accordingly, the Supreme Court held the trial court did not err when, 11 years after it erroneously classified the defendant at sentencing as a Tier I sex offender under the Adam Walsh Act, the trial court entered a judgment entry stating the defendant was a sexually oriented offender

under Megan's Law. The Supreme Court reasoned that "neither Schilling's sentencing entry nor any other judgment entered by the trial court in this case actually imposed, by judicial determination, the Tier I classification"; rather, the classification happened automatically by operation of law. *Schilling* at ¶ 23. Relevant to the case before us now, the Supreme Court further held "[l]ikewise, classification as a sexually oriented offender under Megan's Law" does "not arise[] from a trial court's judgment" but also "arises automatically from the person's conviction for a sexually oriented offense * * * and the person's past conduct not qualifying the person as a habitual sex offender or a sexual predator." *Id.* at ¶ 25.

{¶ 55} Therefore, contrary to the trial court's reliance on *Smith*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, and *Henderson* to determine it could not impose the sexual predator classification now, *Ronan II* authorized the trial court to impose the sexual predator classification it previously determined. *Schilling* supports our conclusion in *Ronan II*.

{¶ 56} I make two final observations. First, in *Ronan II*, we also instructed that procedendo, not appeal, is the proper remedy where no final appealable order exists. "Here, the trial court has failed to reduce to judgment the decision in which appellant was found to be a sexual predator. Procedendo, not appeal, would be the proper remedy for cross-appellant in this case." *Id.* at ¶ 21.

{¶ 57} Second, if the trial court enters a final judgment entry as to Todd's classification pursuant to Megan's Law, such an entry will "not negate the finality of [his] conviction and sentence nor subject them to an appeal [if] the sexual predator determination [is] journalized." *State v. Morgan*, 10th Dist. No. 06AP-620, 2007-Ohio-1700, ¶ 16 (dismissing as untimely Morgan's assignments of error relating to sufficiency and manifest weight).

LUPER SCHUSTER, J., concurring in judgment only with separate opinion.

{¶ 58} Because I would find Todd's original sentencing entry was a final appealable order with respect to his Megan's Law classification and that res judicata applies to bar the state from subsequently arguing that classification was incorrect, I respectfully concur separately.

{¶ 59} There is no dispute here that Todd was convicted of a sexually oriented offense, as that term is defined under Megan's Law. As the majority notes, pursuant to Megan's Law, a person who is convicted of a sexually oriented offense is subject to one of three possible sex offender classifications: (1) sexually oriented offender, (2) habitual sex offender, and (3) sexual predator. Former R.C. Chapter 2950. Under the plain language of Megan's Law, an offender is classified as a sexually oriented offender by operation of law, while the remaining two classifications, habitual sex offender and sexual predator, must occur by court action. Former R.C. Chapter 2950; *State v. Sansone*, 10th Dist. No. 11AP-799, 2012-Ohio-2736, ¶ 9. Thus, at minimum, an offender who commits a sexually oriented offense during the applicable dates of Megan's Law will be designated, by operation of law, a sexually oriented offender.

{¶ 60} Here, when Todd entered his guilty plea, the trial court conducted a hearing and purported to find Todd a sexual predator under Megan's Law. However, the trial court did not include Todd's designation as a sexual predator in the sentencing entry. Instead, the entry was silent as to any Megan's Law classification. The majority concludes the trial court's failure to include any Megan's Law classification in the entry renders the entry non-final with respect to the Megan's Law classification. I disagree and, for the following reasons, would find the omission of the classification in the entry nonetheless resulted in a final appealable order with respect to the Megan's Law classification.

{¶ 61} Significantly, under former R.C. 2950.09(B)(1), a trial court determining whether to classify a defendant as a sexual predator "shall conduct a hearing to determine whether the offender is a sexual predator * * * *prior to sentencing* and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing." (Emphasis added.) Additionally, under former R.C. 2950.09(B)(3), the trial court must specify the sexual predator classification in the sentencing entry. Specifically, the statute states:

> If the judge determines that the offender is not a sexual predator, the judge *shall specify in the offender's sentence and the judgment of conviction that contains the sentence* that the judge has determined that the offender is not a sexual predator. If the judge determines by clear and convincing evidence that the offender is a sexual predator, the judge *shall specify in the offender's sentence and the judgment of conviction that contains the sentence* that the judge has determined that the offender is a sexual predator and shall specify that the

determination was pursuant to division (B) of this section. The offender and the prosecutor who prosecuted the offender for the sexually oriented offense in question may appeal as a matter of right the judge's determination under this division as to whether the offender is, or is not, a sexual predator.

(Emphasis added.) Former R.C. 2950.09(B)(3). (1999 version.) Thus, even though the Megan's Law classification is collateral to the criminal conviction, the statute specifically requires that the trial court include its determination of a defendant's status as a sexual predator under Megan's Law in the judgment of conviction that contains the sentence. As this court has previously held, where the sentencing entry does not indicate that the defendant is a sexual predator under Megan's Law, that classification does not attach pursuant to the terms of former R.C. 2950.09(B)(3). *State v. Smith*, 10th Dist. No. 11AP-311, 2011-Ohio-6669, ¶ 10. Here, the trial court failed to include Todd's classification as a sexual predator in the sentencing entry. I would follow *Smith* and find that the trial court's failure to include the sexual predator classification in the sentencing entry means the classification did not attach. *Id.* Instead, because the classification of sexually oriented offender occurs by operation of law, Todd is a sexually oriented offender. *Id.*, quoting *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4196, paragraph two of the syllabus (stating that if the offender " 'is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law' ").

{¶ 62} Additionally, as noted in the quoted language above, former R.C. 2950.09(B)(3), either the defendant or the prosecutor may appeal as a matter of right from the trial court's determination that a defendant is or is not a sexual predator. If the state believed Todd should have been classified as a sexual predator, its remedy was to appeal from the original sentencing entry even though the entry was silent as to the Megan's Law classification because, as explained above, the classification of sexually oriented offender occurred by operation of law. The state did not timely appeal from Todd's original sentencing entry, and res judicata now bars the state from challenging the Megan's Law classification in the sentencing entry that was issued more than 24 years ago. *Smith* at ¶ 9, citing *State v. Haynes*, 10th Dist. No. 03AP-574, 2004-Ohio-591, ¶ 8-10 ("res judicata bars the state from challenging the sentencing entry now, given that it could have previously filed an appeal when the entry was issued 14 years ago").

{¶ 63} The majority acknowledges this court's decision in *Smith* but does not follow it because *Smith* does not acknowledge another line of prior cases from this court, *State v. Ronan*, 10th Dist. No. 04AP-1387, 2005-Ohio-5088 ("*Ronan I*"), and *State v. Ronan*, 10th Dist. No. 06AP-63, 2007-Ohio-168 ("*Ronan II*"). In *Ronan I*, this court held "[b]ecause the trial court has not journalized its decision finding defendant to be a sexual predator, we lack a final appealable order" and dismissed the defendant's appeal challenging his classification. *Ronan I* at ¶ 8. In *Ronan II*, we relied on *Ronan I* and additionally concluded that res judicata would not apply because there was no final appealable order with respect to the Megan's Law classification. Thus, the majority here would rely on *Ronan I* and *Ronan II* and would overrule *Smith*. I would do the opposite.

{¶ 64} In *Ronan I*, this court did not engage in any analysis of the statutory requirement of former R.C. 2950.09(B)(3) that designation as a sexual predator must be in the sentencing entry and how that portion of Megan's law must interplay with the provision of Megan's Law making the sexually oriented offender classification occur as a matter of law. Instead, this court made a perfunctory statement that failure to journalize the sexual predator decision rendered the order non-final. *Ronan II* then expanded on this court's error in *Ronan I* when it continued to conclude the order was non-final with respect to the Megan's Law classification and, as such, res judicata would not apply. *Smith*, on the other hand, appropriately examines the statutory framework of Megan's Law and concludes, correctly, that because the sexually oriented offender classification occurs as a matter of law, the sentencing entry is final with respect to the Megan's Law designation even where the entry omits the designation. Thus, I would reaffirm *Smith* and instead would overrule *Ronan I* and *Ronan II*.

{¶ 65} Further, I do not agree with the majority's interpretation of and reliance on two decisions of the Supreme Court of Ohio: *State ex rel. Hunter v. Binette*, 154 Ohio St.3d 508, 2018-Ohio-2681, and *State v. Schilling*, ___ Ohio St.3d ___, 2023-Ohio-3027. The majority notes the statutory requirement in former R.C. 2950.09(B)(3) that the trial court include the sexual predator designation in the judgment of conviction that contains the sentence but relies on *Binette* for the proposition that former R.C. 2950.09(B)(3) allowed for more flexibility than the plain language indicates. In *Binette*, the defendant challenged the finality of his sentencing entry containing his criminal sentence on the grounds that the

trial court's failure to include the Megan's Law classification by continuing the sexual predator hearing rendered the judgment non-final. The Supreme Court disagreed, explaining that the trial court's failure to determine the Megan's Law classification had no effect on the finality of the criminal judgment of conviction and sentence, as the "sex-offender-classification proceedings were 'legally distinct from the proceedings governing a defendant's underlying criminal conviction(s) and sentence.' " *Binette* at ¶ 16, quoting *State v. Gibson*, 2d Dist. No. 2009 CA 47, 2010-Ohio-3447, ¶ 25. Thus, the holding in *Binette* relates to the finality of the *criminal judgment of conviction and sentence* and not to the finality of the Megan's Law classification.

{¶ 66} Nonetheless, the majority then expands the analysis in *Binette* as necessarily indicating that a trial court that omits a Megan's Law classification has failed to enter a final judgment in the classification. I do not agree. Though I acknowledge the Supreme Court states in *Binette* that "courts often addressed the criminal sentence and the classification determination in separate entries and treated them as separately appealable orders," the Supreme Court does not engage in an analysis of whether such separate proceedings and resulting entries are permissible, under the plain terms of the statute, and what impact on the finality of the Megan's Law classification such separate entries would have. *Id*. at ¶ 16, citing *State v. Dobrski*, 9th Dist. No. 06CA008925, 2007-Ohio-3121, ¶ 1. That statement also must be read in the context of the court's analysis of the finality of the criminal judgment of conviction and sentence. As there is no analysis in *Binette* of the finality of a Megan's Law classification, I would not expand *Binette* to support the majority's position here. Moreover, I would not find the statement in *Binette* about courts addressing the classification in a separate entry erodes the requirement from the plain language of the statute: that the court making the sexual predator designation must do so in the criminal judgment of conviction and sentence. Former R.C. 2950.09(B)(3).

{¶ 67} In *Schilling*, the other Supreme Court case upon which the majority relies, the trial court erroneously classified the defendant as a Tier I sex offender under the AWA when, pursuant to the date the defendant committed the offense, the defendant should have been classified under Megan's Law. *Id*. at ¶ 1. Neither the state nor the defendant appealed the trial court's erroneous classification under the AWA instead of Megan's Law. More than 11 years after his conviction, the defendant sought early termination of his sex offender

registration status under the AWA. In response, the state argued that based on the date of his offense, Megan's Law, and not the AWA, applied to his classification status. The trial court agreed with the state that the defendant was a sexually oriented offender under Megan's Law. On appeal, the First District reversed the trial court and found that because the trial court's erroneous classification of the defendant under the AWA rather than Megan's Law was a final judgment and neither party appealed, res judicata operated to bar the state's argument pursuant to *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784. The state appealed to the Supreme Court, and the Supreme Court disagreed with the First District and reversed. Specifically, the Supreme Court held "that a person's classification as a sexually oriented offender under Megan's Law occurs by operation of law, and therefore, our recent decision in *Henderson* * * * does not apply to a trial court's error in determining a person's sex-offender classification." *Schilling* at ¶ 39.

{¶ 68} The majority relies on the holding of *Schilling* to support its position that res judicata cannot apply where the trial court did not issue a final judgment. However, the Supreme Court in *Schilling* did not hold that an erroneous classification under Megan's Law is not a final appealable order. Nor did *Schilling* hold, as the majority suggests, that res judicata can never operate to bar a state's challenge to an error in the trial court's classification of an offender under Megan's Law. Instead, *Schilling* reiterates that because classification as a sexually oriented offender under Megan's Law occurs by operation of law, a state's failure to appeal from an error in classification does not prevent the operation of law classification from occurring.

{¶ 69} The circumstances here are distinct from the procedural history in *Schilling*. In *Schilling*, the state acknowledged its initial failure to appeal from the erroneous classification but argued that because the sexually oriented offender classification under Megan's Law occurs as a matter of law, the state's failure to appeal did not affect the operation of law classification from occurring, and the Supreme Court agreed. Here, the state is not advocating for the operation of law classification of sexually oriented offender. Instead, the state seeks the more onerous classification of the sexual predator designation under Megan's Law. This situation is procedurally distinct from *Schilling*. Here, I would find that even though the trial court failed to include the Megan's Law classification in the judgment of conviction, at minimum, the sexually oriented offender classification occurred

by operation of law. If the state believed Todd should have received a higher classification, here, sexual predator classification, such classification does not occur by operation of law, and the state had the responsibility to appeal from that error at the time of the judgment. The state did not do so here, and *Schilling* does not operate to relieve the state from its failure to file a timely appeal.

**{¶ 70}** Lastly, I would find nunc pro tunc is not appropriate here given the plain language of former R.C. 2950.09(B)(3) that the state may appeal as of right the trial court's failure to designate the offender a sexual predator under Megan's Law. Thus, although the state is correct that the record clearly indicates the trial court intended to classify Todd as a sexual predator, the state's remedy was to file a timely appeal from the original sentencing entry.

**{¶ 71}** For these reasons, I would overrule both of the state's assignments of error. Because the majority reaches this outcome for different reasons, I respectfully concur separately.

———————————————